**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IDIT COHEN,

Plaintiff,

-against-

FITNESS INTERNATIONAL, LLC d/b/a LA FITNESS & WELLNESS, BRIAN JOHNSON, Individually and in his Official Capacity, and NEIL COHEN, Individually and in his Official Capacity

Defendants.

**Case No.:26-cv-5562**

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff, Idit Cohen, by her attorneys, Mizrahi Kroub LLP, as and for her complaint against Defendants Fitness International, LLC d/b/a LA Fitness & Wellness, Brian Johnson, and Neil Cohen ("LA Fitness," "Johnson," "Neil," or collectively referred to as "Defendants"), respectfully alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Idit Cohen's story begins with outstanding performance and unwavering commitment, only to end with sexual advances she could not escape and termination she did not deserve. From December 2022 until her unlawful termination on October 15, 2024, Cohen was a highly successful Master Trainer at LA Fitness' Lawrence, New York location who built an impressive client base. She was not only the most active trainer at her location for months on end, but she was also the only female trainer and the only Israeli trainer at the gym. These distinctions made Cohen both uniquely valuable to clients seeking her services and uniquely vulnerable to the mistreatment she would soon endure.

2. What began as a promising career trajectory quickly devolved into a nightmare when Brian Johnson arrived as her supervisor in July 2024. Within the first two weeks of his tenure

as Personal Training Director, Johnson regularly made sexual comments about Cohen's body, repeatedly attempted to touch her muscles, waist, arms, and thighs under the pretense of showing her how to measure customers, and persistently asked invasive questions about her marriage.

3. After enduring two weeks of this unwelcome and inappropriate conduct, Cohen confronted Johnson directly, telling him he was ***"making [her] uncomfortable"*** and demanding he ***"stop [his] aggression."***

4. Rather than ceasing his misconduct, Johnson became openly hostile, yelling at Cohen in front of clients and staff, threatening to fire her and call the police to have her forcibly removed from the gym. Johnson set out to deliberately and systematically dismantle Cohen's thriving practice. For example, he began shouting "Idit" loudly across the training floor while she was with clients, creating unnecessary disruptions that humiliated her and interfered with her ability to work, removed chairs from her work area, and actively targeted her client relationships. Cohen was further devastated that Johnson weaponized his authority over client assignments and stopped assigning new clients to Cohen entirely. The message was clear: Cohen's refusal to submit to Johnson's sexual advances would cost her professionally.

5. Johnson's conduct did not occur in a vacuum. General Manager Neil Cohen, who had a close personal friendship with Johnson, actively condoned and participated in Cohen's mistreatment. Neil was physically present at the gym while Johnson made advances and inappropriate comments toward Cohen, yet he failed to intervene. When Cohen attempted to raise her concerns with Neil, he responded with a shockingly inappropriate comment, pointing at her and asking, ***"are you Israeli? Israelis are aggressive and cause trouble. You're not gonna cause trouble are you?"*** Neil himself engaged in sexually inappropriate conduct, changing clothes

outside the designated changing area on at least three occasions while suggestively staring at Cohen, making her feel exceedingly unsafe.

***6.*** Desperate for relief, Cohen repeatedly sought help from LA Fitness' management and Human Resources. On August 8, she sent a written email complaint to corporate headquarters explicitly pleading ***"I ASK LA FITNESS TO ADDRESS WHAT COULD POSSIBLY BE ANTI SEMITIC OR GENDER BIAS TOWARDS ME."*** On August 12, Cohen escalated her complaint to Vice President Mike via text message, copying the full content of her August 8 email and explicitly stating ***"I'm asking for your help regarding the harassment & aggressive retaliation towards me from Brian, the personal training mgr."*** LA Fitness' response was not to appropriately investigate, remedy, or address Cohen's serious allegations of sexual harassment, discrimination, and retaliation. Instead, when Cohen subsequently verbally conveyed her complaints to HR representative Lina Anderson, Anderson actively discouraged Cohen from making additional complaints. Anderson explicitly told Cohen that raising such concerns was ***"not a good thing to do."*** When Cohen complained about Johnson withholding clients from her, Anderson minimized her concerns, telling Cohen she ***"had enough clients and did not need any more."*** Isolated and ignored by management despite her repeated pleas for intervention, Cohen felt utterly powerless and defeated.

***7.*** Following her complaints to HR, Cohen's experience deteriorated further. For approximately two weeks, Neil repeatedly approached Cohen to tell her she was ***"causing problems"*** and then walked away. Johnson excluded Cohen from the team's weekly meetings where he assigned work schedules and discussed strategies for client needs. Cohen was left isolated, professionally sabotaged, and branded as a troublemaker for having the audacity to complain of the mistreatment she endured.

8. On October 15, Neil Cohen, Brian Johnson, and Operations Manager Drita Duraku informed Cohen that she was terminated. Neil instructed her to leave the building immediately, advised her she was never permitted to enter the premises again, and told her to call HR for an explanation. When Cohen contacted Anderson seeking a basis for the termination decision, Anderson deflected and deferred to Neil. One month later, Anderson finally claimed that Cohen was fired because LA Fitness allegedly discovered Cohen was training clients privately—an unfounded accusation.

9. The truth is unmistakable: Cohen was terminated in retaliation for opposing the sexual harassment, gender discrimination, and anti-Semitic treatment she experienced. Despite being the most active and successful trainer at her location, maintaining the highest number of training appointments month after month, and consistently receiving praise for her exemplary performance, Cohen was systematically targeted, isolated, and ultimately fired because she refused to tolerate illegal conduct and because she had the courage to report it.

## PARTIES

10. Plaintiff Idit Cohen is a 51-year-old Israeli-Jewish woman who resides in Valley Stream, New York. Cohen worked as a Personal Trainer at Fitness International, LLC from December 29, 2022, until her employment was terminated on October 15, 2024. Cohen worked at the Company's 345 Rockaway Turnpike, Lawrence, NY 11559 location.

11. Defendant Fitness International, LLC is a domestic corporation registered to conduct business in and organized under the laws of the State of New York. Defendant operates under the trade name LA Fitness & Wellness. Defendant's principal place of business is located at 3161 Michelson Drive, Suite 600, Irvine, CA 92612.

12. Defendant employs more than 15 employees and thus is an employer within the meaning of Title VII.

13. Defendant Brian Johnson is and was the Personal Training Director at the Lawrence, New York location. Johnson supervised employees, including Cohen. At all times, Johnson had the authority to affect the terms and conditions of Cohen's employment.

14. Defendant Neil Cohen is and was the General Manager at the Lawrence, New York location. Neil Cohen supervised employees, including Cohen. At all times, Neil Cohen had the authority to affect the terms and conditions of Cohen's employment.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over Cohen's claims pursuant to 28 U.S.C. § 1331 and § 1343, as she has asserted claims that arise under the federal laws of the United States. This Court also has supplemental jurisdiction over Cohen's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims in this action such that they form part of the same case or controversy.

16. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions on which the claims are asserted herein occurred in this District, specifically at Defendant's 345 Rockaway Turnpike, Lawrence, NY 11559 location where Cohen was employed.

17. On July 14, 2025, Cohen filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging claims against Fitness International, LLC under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Cohen's EEOC Charge Number is 520-2025-07412.

18. On June 10, 2026, the EEOC issued Cohen a Notice of Right to Sue. Cohen timely files this Complaint within 90 days thereafter.

19. Cohen elects, pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 401-402, to proceed in court and not in arbitration. This action concerns a sexual-harassment-related dispute and retaliation arising from Plaintiff's complaints of sexual harassment, all of which arose after March 3, 2022. Any predispute arbitration agreement is therefore invalid and unenforceable with respect to this case.

## FACTUAL ALLEGATIONS

***General Background on LA Fitness***

20. LA Fitness is a large, sophisticated employer operating over 700 health club facilities worldwide, including approximately 35 facilities in New York.[1]

21. LA Fitness maintains its corporate headquarters at 3161 Michelson Drive, Suite 600, Irvine, CA 92612, in California, with extensive operations throughout New York State.

22. LA Fitness holds itself out as "an equal-opportunity employer and value diversity at our company. We do not discriminate on the basis of race, religion, color, sex, national origin, gender, gender identity, sexual orientation, age, disability status, and/or any other protected basis or characteristic (or combination thereof) under applicable law."[2]

23. However, despite its purported value, LA Fitness engages in, condones, and participates in subjecting its very own employees to discriminatory practices.

24. On or about March 4, 2016, Rashin Nosratabdi filed a complaint against Defendants Fitness International, LLC d/b/a L.A. Fitness and Michael Jager in the United States District Court for the Eastern District of New York, Case No. 2:16-cv-01098, alleging discrimination and

---

[1] https://www.lafitness.com/Pages/findClub.aspx?state=NY
[2] https://www.lafitness.com/Pages/Employment.aspx

retaliation based on gender and familial status in violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law.

25. The Nosratabdi case alleged that Defendants discriminated against plaintiff because she was female and a mother with young children, refused to accommodate her childcare needs by threatening termination if she brought her children to the LA Fitness Kids Club, required her to commit to specific sales targets in writing that male employees were not required to meet, and terminated her employment despite being referred to as an "A Player" and superior Sales Counselor.

26. On or about September 6, 2019, Shevonne Simeon filed a complaint against Defendants Fitness International, LLC and L.A. Fitness International, LLC d/b/a L.A. Fitness, David Thomas, Yvette Green, Cameron Doe, and Darren Ramroop in the United States District Court for the Eastern District of New York, Case No. 1:19-cv-05080, alleging sex-based discrimination, sexual harassment, and retaliation in violation of Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

27. The Simeon case alleged that Defendant Ramroop, a manager and supervisor, subjected plaintiff to severe and pervasive sexual harassment including sexualized comments such as “Are we fucking?” and statements about being “in between your legs” accompanied by obscene gestures and that plaintiff was wrongfully terminated within one week of her complaint.

28. On or about February 17, 2005, Michael Sperber filed a complaint against Defendant L.A. Fitness International, LLC in the United States District Court for the Eastern District of New York, Case No. 2:05-cv-00908, alleging discrimination based on gender in the form of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law.

29. The Sperber case alleged that plaintiff's immediate supervisor and general manager, Daniel Cooper, subjected him to continuous and pervasive sexual harassment both physical and verbal including slapping his butt, grabbing his hair, and putting his hands over plaintiff's hands, that when plaintiff complained Cooper was briefly suspended, and that less than a week after returning from suspension Cooper resumed the sexual harassment and plaintiff was ultimately terminated after complaining.

30. On or about February 24, 2014, Andy Mesidor filed a complaint against Defendants Fitness International, LLC d/b/a LA Fitness, Brandi Williams, Michael Ulibarri, Paul Newman, and Ryan Rutzel in the United States District Court for the Eastern District of New York, Case No. 1:14-cv-01144, alleging discrimination based on race (Black) in violation of 42 U.S.C. § 1981 and failure to pay commissions in violation of the New York Labor Law.

31. The Mesidor case alleged that Defendant Rutzel made racial comments to plaintiff including that "black people's hair was like brillo pads," boasted he was better than plaintiff because he was "white and good-looking," sent plaintiff a text message stating "Stop being Black" when plaintiff was pulled over, that Defendants repeatedly denied plaintiff earned bonuses and promotions by constantly changing the requirements after plaintiff met them, and that Defendants ultimately terminated plaintiff's employment in retaliation for his complaints.

32. On or about March 11, 2010, Maria D'Agostino filed a complaint against Defendants LA Fitness International, LLC d/b/a LA Fitness and LA Fitness Sports Clubs, Michael Sharp, and Pro Results in the United States District Court for the Eastern District of New York, Case No. 1:10-cv-01120, alleging discrimination based on gender and age in violation of Title VII, the Age Discrimination in Employment Act, and the New York State Human Rights Law, as well as retaliation.

33. The D'Agostino case alleged that Defendant Sharp, District Vice President, discriminated against plaintiff as an older female employee by treating her disparately with unprofessional, loud, vulgar, demoralizing, and degrading behavior, that male employees including those with poor performance records and prior terminations for illegal steroid use were promoted over plaintiff while she was told "women aren't good at taking credit cards," that after plaintiff complained she was given an ultimatum to choose between termination and demotion while younger male employees with worse performance received no such ultimatum, and that plaintiff was forced to resign as a result.

34. On or about January 22, 2010, Carryl Kelly filed a complaint against Defendants LA Fitness International, LLC d/b/a LA Fitness, Anibal Serrano, and Larry Flammia in the United States District Court for the Eastern District of New York, Case No. 2:10-cv-00296, alleging discrimination based on gender, age, and race, hostile work environment, retaliation, and defamation in violation of Title VII, the Age Discrimination in Employment Act, and the New York State Human Rights Law.

35. The Kelly case alleged that after Defendant Serrano was promoted to Vice President he began discriminating against plaintiff by undermining her authority as general manager, spreading false information that she had stolen from LA Fitness and its employees, forcing her to choose between demotion or termination without explanation despite sales figures that were not below company averages, and that Defendants defamed her by disseminating false statements about theft that were communicated to employees and gym members causing her public humiliation.

36. On or about April 15, 2009, Yvette Mariano filed a complaint against Defendants LA Fitness International, LLC d/b/a LA Fitness and Anabell Serano (Andy Serano) in the United

States District Court for the Eastern District of New York, Case No. 2:09-cv-01395, alleging discrimination based on gender and age in violation of Title VII, the Age Discrimination in Employment Act, the New York State Human Rights Law, as well as retaliation and defamation.

37. The Mariano case alleged that Defendant Serano, Vice President, discriminated against plaintiff as an older female employee by treating her disparately from younger male assistant managers, falsely accused her of stealing from LA Fitness by training gym members "under the table" without evidence or prior investigation, wrongfully terminated her employment based on these false and unsubstantiated allegations of theft, presented her with a "reprimand" document after termination that addressed sales figures rather than the stated reason for termination, and defamed her by broadcasting false statements about theft to other employees and gym members causing her humiliation and damage to her reputation.

38. Each of the foregoing lawsuits alleged discriminatory, harassing, and/or retaliatory conduct by Defendant LA Fitness against employees in violation of federal, state, and/or local civil rights laws.

***<u>Cohen's Hire and Exemplary Performance</u>***

39. On December 29, 2022, LA Fitness hired Cohen as a Personal Trainer at its 345 Rockaway Turnpike, Lawrence, NY 11559 location.

40. Cohen performed her job duties in an exceptional manner from the very onset of her employment and maintained an unblemished performance record throughout her employment.

41. On January 15, 2023, in recognition of Cohen's outstanding performance and capabilities, LA Fitness promoted Cohen to Master Trainer.

42. As a Master Trainer, Cohen was responsible for ensuring members received guidance, motivation, and exceptional customer experience through individualized fitness programs tailored to each client's needs.

43. Cohen reported directly to General Manager Neil Cohen throughout her tenure.

44. Upon information and belief, there were at least two prior sexual harassment complaints lodged against Neil Cohen while he was employed by Defendant.

45. Cohen additionally reported to Personal Trainer Director Brian Johnson from his hire on or around July 1, 2024, until Cohen's termination.

46. Cohen attracted a substantial client base of approximately 40 clients and trained around 16 clients each day, making her the most successful and busiest trainer at her location.

47. Specifically, Cohen attracted many female Jewish clients, as she was the only Jewish trainer and the only female trainer at the Lawrence location.

48. Clients regularly and specifically requested Cohen's personal training services, which further demonstrated her successful abilities and qualifications.

49. Furthermore, Cohen's training appointment records demonstrate her exceptional productivity: in May 2024, she completed 178 training appointments; in June 2024, she completed 139 appointments; in July 2024, she completed 172 appointments; in August 2024, she completed 149 appointments; and in September 2024, she completed 159 appointments.

50. Throughout the months of May through September 2024, Cohen was consistently the most active trainer at the Lawrence location, maintaining the highest number of training appointments among all personal trainers at that facility.

51. Cohen's exceptional performance was never the subject of formal discipline prior to the events described herein.

***<u>Johnson Subjects Cohen to a Campaign of Sexual Harassment and Discrimination</u>***

52. On or around July 1, 2024, LA Fitness hired Johnson as the Personal Training Director at the Lawrence location.

53. As Personal Training Director, Johnson became Cohen's direct supervisor and held authority over client assignments, scheduling, and the terms and conditions of Cohen's employment.

54. Beginning shortly after Johnson became Cohen's supervisor on or around July 1, 2024, Johnson repeatedly approached Cohen when no other employees were nearby and made comments directed at her body and appearance. On multiple occasions, he quietly told Cohen words to the effect of, ***"you're in really good shape,"*** while looking at her body in a manner that made clear the comment was personal and sexual rather than ordinary workplace coaching.

55. Johnson also repeatedly attempted to touch Cohen's body under the false pretense of demonstrating how to measure customers before workouts. Johnson did not need to use Cohen's body to train her on measurement techniques, and he did not treat male trainers this way. Nevertheless, he moved close to Cohen and reached toward her muscles, waist, arms, and thighs. Each time, Cohen stepped away to avoid the contact because the touching was unwelcome, unnecessary, and made her feel physically unsafe with her supervisor.

56. Johnson's conduct was especially intimidating because he controlled Cohen's client assignments, schedule-related information, and day-to-day working conditions. Cohen understood that rejecting Johnson's advances could affect her ability to receive clients and continue succeeding as a Master Trainer.

57. Johnson also repeatedly questioned Cohen about her marriage, including asking whether she was happy in her marriage. Johnson's questions were not connected to Cohen's job

duties and, in context with his body-focused comments, attempts to touch her, and repeated efforts to spend personal time with her, Cohen understood these questions as romantic and sexual overtures from her supervisor.

58. Over the same approximately two-week period, Johnson repeatedly approached Cohen during her lunch breaks and asked her to eat with him. He did so approximately five times despite Cohen's repeated refusals and efforts to create distance. On one occasion, Johnson took food from Cohen's lunch, asked whether she was a good cook, and then asked Cohen to cook for him and bring extra food to work so they could eat together.

59. Cohen understood these comments as personal, gendered, and romantic overtures unrelated to her job.

60. Johnson also commented on Cohen's possessions and finances, including stating that she had "a really nice car" and asking whether she had "a lot of money." Cohen understood this line of questioning as part of Johnson's effort to develop an inappropriate personal relationship with her and to test whether she would engage with him beyond a professional supervisor-subordinate relationship.

61. Cohen did not welcome Johnson's comments, questions, lunch invitations, or attempts to touch her body. She attempted to avoid Johnson, create physical distance, and keep their relationship strictly professional. Rather than respecting those boundaries, Johnson escalated his conduct until Cohen directly confronted him.

62. It was clear to Cohen that Johnson was pursuing Cohen romantically and sexually through unwelcome overtures and personal comments about her domestic abilities, his persistent questioning about her marriage, and repeated requests to spend time with her outside of work duties.

63. After approximately two weeks of unwelcome daily conduct, Cohen directly confronted Johnson. She told him that he was making her uncomfortable and demanded that he stop his aggression. Cohen's complaint to Johnson was opposition to sexual harassment and unwanted sexual advances, including his body-focused comments, attempts to touch her waist, arms, thighs, and muscles, questions about her marriage, and repeated requests to eat with her.

***Johnson Isolates Cohen and Interferes with her Client Base Immediately After her Complaint***

64. Immediately after Cohen rejected and opposed Johnson's sexualized conduct, Johnson's demeanor changed. Johnson told Cohen she was ***"on [her] own,"*** withdrew the support and client-assignment opportunities he provided to male trainers, and began using his supervisory authority to punish Cohen for refusing his advances and complaining that he made her uncomfortable.

65. Johnson's whole demeanor toward Cohen changed dramatically; he began to exhibit relentless hostility toward her and exhausted all efforts to humiliate Cohen and interfere with her ability to perform her job duties or maintain her client relationships.

66. For example, Johnson frequently yelled at Cohen in front of staff and customers, creating scenes that humiliated and embarrassed her in her workplace. Johnson would shout Cohen's name so loudly it echoed throughout the training floor while Cohen was training her clients. The first several times Johnson shouted Cohen's name across the gym floor, Cohen believed he was summoning her regarding an urgent work matter. However, when Cohen walked over to Johnson, he would remain silent.

67. On one occasion, while Cohen was training a client, Johnson repeatedly called out to her from across the training floor. Cohen stepped away from her client to determine whether Johnson needed her for a work-related reason and calmly asked whether there was something he

needed to discuss. Johnson did not identify any urgent work matter and instead told Cohen he would advise her when the secretary arrived. When Cohen attempted to return to her client so she could continue the training session, Johnson told her, without basis, that if she continued walking away, she would be fired. Johnson then ordered Cohen to leave the gym immediately and said he would call the police if she did not.

68. On July 23, 2024, Cohen, Johnson, and Operations Manager Drita Duraku had a meeting. At this meeting, Johnson did nothing but speak to Cohen in a hostile and accusatory manner.

69. Johnson's unprofessional and hostile conduct at this meeting was witnessed by Cohen's client, Veronica Cruz, who was present at the gym during the meeting. Cruz felt so disrespected by Johnson's treatment of Cohen that she specifically asked Cohen to provide her name and phone number to Human Resources so that she could discuss Johnson's unprofessionalism.

70. Similarly, another of Cohen's clients, Aharon Travis, was also present and witnessed Johnson's hostile treatment of Cohen, and he also requested that Cohen provide his contact information to Human Resources to discuss his displeasure with Johnson's conduct.

71. In another attempt to set Cohen up for failure, Johnson actively targeted her clients to taint their customer experience and push them to leave the gym. For instance, Johnson removed chairs from Cohen's work area and placed them in closets to prevent Cohen from sitting and speaking comfortably with her clients.

72. Shortly after Cohen rejected Johnson's sexual advances, Johnson targeted Cohen's client Rachel, who had regularly attended the gym with her five-year-old child without prior issue. Johnson yelled at Rachel and refused to allow her into the facility, causing Rachel to stop training

with Cohen. Cohen understood Johnson's conduct as part of his effort to punish her professionally for rejecting his advances.

73. In a further effort to destroy Cohen's client relationships, Johnson told Cohen's client Anna that Cohen was inadequate at her job and was not as good as other trainers. As intended, Anna discontinued her training sessions with Cohen as a direct result of Johnson's disparaging comments.

74. Johnson was also actively convincing Cohen's other clients to use other trainers by telling them that Cohen was "not as good" as the male trainers at the location.

75. As Personal Training Director, Johnson was responsible for assigning new clients to trainers based on client requests, trainer availability, and business needs. Despite Cohen's exemplary performance, Johnson stopped assigning any new clients to Cohen.

76. Starting on or around July 20, Johnson assigned all new incoming clients to Cohen's male counterparts and completely cut Cohen off from new business opportunities.

77. Out of the numerous new incoming clients during this period, Johnson assigned only one client, Ester, to Cohen only because Ester explicitly requested a female trainer. Given that Cohen was the only female trainer at the Lawrence location, Johnson was forced to honor Ester's request.

78. Even then, Johnson did everything in his power to destroy that client relationship by making Ester exceedingly uncomfortable. On one occasion when Cohen came to greet Ester, Johnson began irrationally yelling at Cohen and telling her not to speak with Ester. As a direct result of Johnson's unprofessional and aggressive conduct, Ester ultimately ceased her training sessions with Cohen after only one session.

79. As Cohen felt increasingly isolated, Johnson weaponized his relationship with Neil Cohen by explicitly telling Cohen that he knew Neil for a long time and that he does everything for Neil. Johnson further told Cohen that she should know that if she ***"doesn't listen"*** to him, he ***"has the power"*** over her due to his friendship with Neil.

80. Johnson's campaign of isolation and targeting left Cohen distressed and demoralized. As he systematically diverted her clients and undermined her professional standing, Cohen became increasingly exasperated. The combination of his sexual advances and subsequent professional sabotage left Cohen feeling powerless and defeated.

***Neil Condones Johnson's Retaliatory Acts Against Cohen and Further Subjects Cohen to a Campaign of Sexual Harassment and Anti-Israeli Discrimination***

81. As Neil had a very close personal friendship with Johnson, he felt emboldened to condone Johnson's campaign of harassment and discrimination against Cohen.

82. Neil was physically present at the gym on numerous occasions while Johnson made sexual advances and inappropriate comments toward Cohen, and Neil observed this behavior but failed to intervene or address it in any manner.

83. Shockingly, when Cohen attempted to bring up her concerns about Johnson's behavior to Neil, he responded with a blatantly discriminatory remark. Specifically, Neil pointed at Cohen, asked if she was Israeli, and then stated: ***"Israelis are aggressive and cause trouble, [you're] not gonna cause trouble are you?"***

84. Neil himself also subjected Cohen to sexually inappropriate conduct. On at least three occasions, Neil changed his clothing outside the designated changing area, near the front area of the gym and by the work desks where Cohen performed her duties. On these occasions, Neil was shirtless and turned toward Cohen while staring at her. These incidents often occurred when

Cohen was alone or lacked immediate support from other employees, making her feel unsafe and trapped at work. Neil also stared at Cohen while she trained clients and pointed at her in a threatening, intimidating manner.

85. Neil's conduct was unwelcome and sexual in nature because he undressed outside the designated changing area, did so in Cohen's view, turned toward her while shirtless, and stared at her while she was trying to work. Cohen did not report Neil's undressing immediately because Neil was the General Manager, was close with Johnson, and Cohen feared further retaliation or termination if she complained about another supervisor.

***<u>Cohen's Internal Complaints and LA Fitness' Inadequate Response</u>***

86. On August 8, 2024, as Cohen could no longer tolerate the work environment she was in and the treatment she endured, Cohen sent a written email complaint to LA Fitness corporate headquarters ("August 8 email").

87. The August 8 email used terms including "discomfort," "inappropriateness," "retaliation," and "gender bias" to describe the sexualized and gender-based conduct Cohen had already experienced from Johnson, including his body-focused comments, repeated attempts to touch her body, questions about her marriage, repeated lunch invitations, and retaliation after she told him to stop. Cohen did not include every sexual detail in the email because she feared escalation and retaliation, but the complaint was intended to report that Johnson's conduct was unwelcome, gender-based, and inappropriate

88. In the August 8 email, Cohen wrote that she had "***RECENTLY EXPRESSED [HER] DISCOMFORT WITH BRIAN AND ADDRESSED HIS INAPPROPRIATENESS TOWARDS [HER] TO LA FITNESS,"*** that ***"SINCE [SHE] INFORMED THE COMPANY OF [HER] DISCOMFORT WITH HIS ACTIONS AND WORDS HE HAS STARTED TO***

***ENGAGE IN RETALIATION TOWARDS [HER],"*** and that she asked LA Fitness to address ***"WHAT COULD POSSIBLY BE ANTI SEMITIC OR GENDER BIAS TOWARDS [HER]."***

89. To date, LA Fitness has failed to respond to, escalate, address, investigate, remedy, or take any corrective action regarding Cohen's complaints of discrimination and retaliation raised in the August 8 email.

90. On August 12, Cohen escalated the same complaint to Vice President Mike by text message. Cohen expressly stated that she needed help with ***"harassment & aggressive retaliation"*** by Johnson and that she had told Johnson he was making her ***"extremely uncomfortable."*** The ***"harassment"*** and ***"extremely uncomfortable"*** language referred to the same sexualized conduct Cohen had rejected, including Johnson's attempts to touch her body, comments about her body, questions about her marriage, and repeated requests to eat with her.

91. LA Fitness failed to respond to, escalate, address, investigate, remedy, or take any corrective action regarding Cohen's complaints of discrimination and retaliation raised in the August 12 text message to Vice President Mike.

92. Sometime between August 12 and August 19 after LA Fitness failed to respond to Cohen's written complaints in any way, Cohen redirected her complaints to LA Fitness' Human Resources Department. In particular, Cohen verbally conveyed her experiences and concerns to HR Representative Lina Anderson over the phone, relaying the full contents of the August 8 email and August 12 text message.

93. Instead of probing for more details to launch a thorough investigation into Cohen's serious allegations, Anderson actively discouraged Cohen from making additional complaints by specifically telling Cohen: ***"It's not a good thing to do."*** Essentially, Anderson admonished Cohen

for raising such serious concerns about anti-Semitic and gender bias, emphasizing the "serious nature" of Cohen's allegations in a manner designed to intimidate Cohen into silence.

94. When Cohen subsequently complained to Anderson that Johnson was withholding new client assignments from her despite her exemplary performance, Anderson once again minimized Cohen's legitimate concerns. Anderson dismissively told Cohen that she ***"had enough clients and did not need any more."***

95. To date, LA Fitness has failed to adequately address, respond to, remedy, investigate, or take any corrective action regarding Cohen's verbal complaints to Anderson.

96. On or around August 21, Anderson spoke with Cohen by phone regarding her complaints. During this conversation, Anderson told Cohen that she had investigated the matter and found no unlawful behavior by Johnson or other LA Fitness management. Anderson advised Cohen that ***"everyone"*** at the Lawrence location needed to remain professional and respectful, effectively placing equal blame on Cohen (the victim) and Johnson (the perpetrator).

97. Anderson's purported investigation was inadequate, failed to interview key witnesses including customers Veronica Cruz and Aharon Travis, and did not result in any corrective action to remedy the hostile work environment or prevent further retaliation against Cohen.

***<u>Cohen's Retaliation Continues Following her Formal Complaints</u>***

***98.*** Over the span of approximately two weeks following Cohen's complaints to HR, Neil repeatedly approached Cohen at work, told her she was ***"causing problems,"*** and then walk away without further explanation.

99. Similarly to Johnson, Neil also actively worked to undermine Cohen's ability to perform her job duties by dissuading clients from training with her.

100. On or around September 15, Cohen's fiancé Raymond Valdes came to the gym and asked to speak with Cohen. Neil, presumably believing that Valdes wished to sign up for personal training with Cohen, told Valdes that there was no one by the name of Idit Cohen who worked at that location. When Valdes called Cohen to inform her of Neil's statement, Neil simply remarked ***"oh, that Idit,"*** confirming that he deliberately denied her existence to a prospective client.

101. This incident made it clear to Cohen that Neil was engaging in deliberate tactics to prevent her from obtaining new clients and to undermine her professional relationships.

102. Additionally, over the two weeks following Cohen's complaints to HR, Johnson excluded Cohen from the team's weekly meetings.

103. During these weekly meetings, Johnson assigned work schedules to the training staff and discussed strategies to approach each client's needs. This information was critical to performing successfully as a personal trainer.

104. Cohen's similarly situated male coworkers continued to receive invitations to and attended these important weekly meetings while Cohen was deliberately excluded.

105. As a direct result of Cohen's exclusion from weekly team meetings, Cohen did not receive important updates, scheduling information, and strategic guidance that her male counterparts received.

***<u>Cohen's Pretextual Termination</u>***

106. On October 15 Neil, Johnson, and Duraku informed Cohen that her employment was terminated.

107. When Cohen asked why she was being terminated, Neil told her to call HR for an explanation and instructed her to exit the building immediately. Neil further advised Cohen that she was not permitted to enter the premises under any circumstances.

108. Cohen immediately contacted Anderson via phone call, seeking a basis for LA Fitness' decision to terminate her employment. In response, Anderson deflected Cohen's question and deferred her inquiry back to Neil, providing no explanation for the termination decision.

109. However, in November, Anderson called Cohen over the phone and advised her that she was fired because LA Fitness purportedly discovered Cohen was training LA Fitness clients privately without properly documenting the sessions or ensuring LA Fitness received payment.

110. Prior to her termination, Cohen was never presented with evidence of her alleged violation. As a result, she did not understand the reason for her termination.

111. Defendants did not afford Cohen the opportunity to defend herself against the allegations of policy violation that formed the basis of her termination.

112. Upon information and belief, Defendants began surveilling Cohen and/or reviewing surveillance footage of Cohen only after she engaged in protected activity by complaining on August 8 and August 12, 2024, about Johnson's sexual harassment, gender bias, and retaliation. Specifically, Johnson reviewed surveillance footage from September 4, September 11, September 18, and September 25, 2024, that purportedly displayed Cohen training the same members on four occasions "under the table." The timing of Defendants' surveillance, Johnson's role in gathering and reporting the alleged footage, and Defendants' failure to provide Cohen proof when she requested it support an inference that Defendants targeted Cohen for retaliatory scrutiny and used the alleged policy violation as a pretext for termination.

113. Cohen is aware that other trainers at the Lawrence location, including Johnson himself, trained LA Fitness customers privately without receiving discipline or termination.

114. On November 6, Cohen received a termination letter from HR's Karyme Rios, which stated only that Cohen's "employment with Fitness International, LLC ended on 10/15/2024."

***Cohen's Termination Continues to Have Devastating Effects on Her Mental Health and Life***

115. As a direct result of the aforementioned, Cohen has suffered and continues to suffer severe emotional distress.

116. Cohen experiences daily depressive episodes lasting from two hours to the entire day. Cohen also suffers from constant nightmares and sleep disruptions, resulting in chronic fatigue and Cohen's anxiety pervades all daily tasks. Moreover, Cohen experienced extreme humiliation arising out of her employment at LA Fitness, such as when Johnson would yell at her in front of co-workers and clients.

117. Cohen's emotional distress manifests in physical symptoms. She suffers severe headaches every morning and night, constant respiratory issues, stomach pain, and frequent gastrointestinal problems. She experiences persistent acne and rashes, and she is losing her hair due to stress. Her appetite has decreased significantly, resulting in substantial weight loss. Cohen is constantly sick and fatigued, with physical symptoms that reflect the severity of her ongoing emotional trauma.

118. LA Fitness's conduct has destroyed Cohen's personal and professional relationships. She has withdrawn socially, avoids crowds, and experiences discomfort and anxiety in social situations. Cohen constantly argues with family and friends without reason, and her romantic relationship has deteriorated substantially due to her inability to trust anyone, including her partner. She does not interact with people because she has no confidence in their intentions after feeling betrayed by LA Fitness management and Human Resources.

**FIRST CAUSE OF ACTION**
**(Sex/Gender Discrimination in Violation of Title VII)**
***Against LA Fitness***

119. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

120. Defendant LA Fitness unlawfully discriminated against Cohen in the terms and conditions of her employment on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") by, *inter alia*, subjecting her to sexual harassment, sexualized comments, unwanted touching attempts, disparate treatment, and a hostile work environment.

121. As a direct and proximate result of Defendant LA Fitness' unlawful discriminatory conduct in violation of Title VII, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

122. Defendant LA Fitness' unlawful discriminatory conduct in violation of Title VII was severe and/or pervasive.

123. Defendant LA Fitness willfully engaged in discriminatory practices with malice and/or reckless indifference to Cohen's federally protected rights under Title VII.

124. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**
***Against Fitness International, LLC***

125. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

126. Defendant LA Fitness unlawfully retaliated against Cohen in violation of Title VII by, *inter alia*, terminating her employment in response to her protected complaints, failing to reasonably investigate and remediate Cohen's claims of discrimination and harassment, actively discouraging her from making complaints, refusing to comply with its own policies and practices, failing to provide a reasonable channel to escalate her complaints, and subjecting her to adverse employment actions including removal of chairs from her work area, cutting off all new client assignments, targeting and destroying her existing client relationships, and excluding her from team meetings.

127. Defendant LA Fitness' retaliation was directly related to Cohen's reports of sexual harassment and her rejection of Johnson's unwanted sexual advances, including his attempted touching, sexualized body comments, invasive marital questions, and repeated personal lunch invitations.

128. As a direct and proximate result of Defendant LA Fitness' unlawful retaliatory conduct in violation of Title VII, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

129. Defendant LA Fitness willfully engaged in unlawful retaliatory practices with malice and/or reckless indifference to Cohen's federally protected rights under Title VII.

130. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**THIRD CAUSE OF ACTION**
**(Sex/Gender Discrimination in Violation of NYSHRL)**
***Against All Defendants***

131. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

132. Defendants unlawfully discriminated against Cohen in violation of The New York State Human Rights Law, as amended, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), in the terms, conditions, or privileges of employment on the basis of her sex by, *inter alia*, subjecting her to sexual harassment, sexualized comments, unwanted touching attempts, disparate treatment, and a hostile work environment.

133. Defendants Johnson and Neil, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful discrimination against Cohen.

134. Alternatively, Defendants Johnson and Neil are personally, directly, and individually liable in that they aided and abetted Defendant LA Fitness in its unlawful discriminatory acts against Cohen.

135. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

136. Defendants' conduct subjected Cohen to inferior terms, conditions, and privileges of employment because of her sex/gender, and rose above what a reasonable victim of discrimination with the same protected characteristics would consider petty slights or trivial inconveniences.

137. Defendants willfully engaged in discriminatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NYSHRL.

138. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**FOURTH CAUSE OF ACTION**
**(National Origin Discrimination in Violation of NYSHRL)**
***Against All Defendants***

139. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

140. Defendants unlawfully discriminated against Cohen in violation of the NYSHRL in the terms, conditions, or privileges of employment on the basis of her national origin (Israeli) by, *inter alia*, subjecting her to the comment "Israelis are aggressive and cause trouble," differential treatment based on her status as the only Israeli trainer at the location.

141. Defendants Johnson and Neil, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful discrimination against Cohen.

142. Alternatively, Defendants Johnson and Neil are personally, directly, and individually liable in that they aided and abetted Defendant LA Fitness in its unlawful discriminatory acts against Cohen.

143. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

144. Defendants' conduct subjected Cohen to inferior terms, conditions, and privileges of employment because of her national origin (Israeli), and rose above what a reasonable victim of discrimination with the same protected characteristics would consider petty slights or trivial inconveniences.

145. Defendants willfully engaged in discriminatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NYSHRL.

146. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

## FIFTH CAUSE OF ACTION
**(Religion Discrimination in Violation of NYSHRL)**
***Against All Defendants***

147. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

148. Defendants unlawfully discriminated against Cohen in violation of the NYSHRL in the terms, conditions, or privileges of employment on the basis of her religion (Jewish) by, *inter alia*, subjecting her to the perceived anti-Semitic comment embedded in her National Origin.

149. Defendants Johnson and Neil, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful discrimination against Cohen.

150. Alternatively, Defendants Johnson and Neil are personally, directly, and individually liable in that they aided and abetted Defendant LA Fitness in its unlawful discriminatory acts against Cohen.

151. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

152. Defendants' conduct subjected Cohen to inferior terms, conditions, and privileges of employment because of her religion, and rose above what a reasonable victim of discrimination with the same protected characteristics would consider petty slights or trivial inconveniences.

153. Defendants willfully engaged in discriminatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NYSHRL.

154. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of NYSHRL)**
***Against All Defendants***

155. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

156. Defendants unlawfully retaliated against Cohen in violation of the NYSHRL by, *inter alia*, terminating her employment in response to her protected complaints, failing to reasonably investigate and remediate Cohen's claims of discrimination and harassment, actively

discouraging her from making complaints, refusing to comply with its own policies and practices, failing to provide a reasonable channel to escalate her complaints, and subjecting her to adverse employment actions including removal of chairs from her work area, cutting off all new client assignments, targeting and destroying her existing client relationships, and excluding her from team meetings.

157. Defendants Johnson and Neil, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful retaliation against Cohen.

158. Alternatively, Defendants Johnson and Neil are personally, directly, and individually liable in that they aided and abetted Defendant LA Fitness in its unlawful retaliatory acts against Cohen.

159. Defendants' retaliation was directly related to Cohen's reports of sexual harassment and her rejection of Johnson's unwanted sexual advances, including his attempted touching, sexualized body comments, invasive marital questions, and repeated personal lunch invitations.

160. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

161. Defendants' conduct was reasonably likely to deter a person from engaging in protected activity, including opposing and reporting sexual harassment, discrimination, and retaliation.

162. Defendants willfully engaged in unlawful retaliatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NYSHRL.

163. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**SEVENTH CAUSE OF ACTION**
**(Sex/Gender Discrimination in Violation of NCHRL)**
***Against All Defendants***

164. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

165. Defendants unlawfully discriminated against Cohen in violation of the Nassau County Human Rights Law (Local Law No. 7-2004, as amended) ("NCHRL"), in the terms, conditions, or privileges of employment on the basis of her sex by, *inter alia*, subjecting her to sexual harassment, sexualized comments, unwanted touching attempts, disparate treatment, and a hostile work environment.

166. Defendants Brian Johnson and Neil Cohen, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful discrimination against Cohen.

167. Alternatively, Defendants Brian Johnson and Neil Cohen are personally, directly, and individually liable in that they aided and abetted Defendant Fitness International, LLC in its unlawful discriminatory acts against Cohen.

168. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NCHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

169. Defendants' conduct constituted a difference in treatment based on Cohen's sex/gender, subjected her to discriminatory and harassing terms, conditions, and privileges of employment, and exceeded petty slights or trivial inconveniences.

170. Defendants willfully engaged in discriminatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NCHRL.

171. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

## EIGHTH CAUSE OF ACTION
**(National Origin Discrimination in Violation of NCHRL)**
***Against All Defendants***

172. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

173. Defendants unlawfully discriminated against Cohen in violation of the NCHRL in the terms, conditions, or privileges of employment on the basis of her national origin (Israeli) by, *inter alia*, subjecting her to anti-Semitic comments, differential treatment based on her status as the only Jewish trainer at the location, a hostile work environment, and adverse employment actions culminating in termination.

174. Defendants Brian Johnson and Neil Cohen, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful discrimination against Cohen.

175. Alternatively, Defendants Brian Johnson and Neil Cohen are personally, directly, and individually liable in that they aided and abetted Defendant Fitness International, LLC in its unlawful discriminatory acts against Cohen.

176. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NCHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

177. Defendants' conduct constituted a difference in treatment based on Cohen's national origin (Israeli), subjected her to discriminatory and harassing terms, conditions, and privileges of employment, and exceeded petty slights or trivial inconveniences.

178. Defendants willfully engaged in discriminatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NCHRL.

179. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**NINTH CAUSE OF ACTION**
**(Religion Discrimination in Violation of NCHRL)**
***Against All Defendants***

180. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

181. Defendants unlawfully discriminated against Cohen in violation of the NCHRL in the terms, conditions, or privileges of employment on the basis of her religion (Jewish) by, *inter alia*, subjecting her to anti-Semitic comments, differential treatment based on her status as the only Jewish trainer at the location, a hostile work environment, and adverse employment actions culminating in termination.

182. Defendants Brian Johnson and Neil Cohen, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful discrimination against Cohen.

183. Alternatively, Defendants Brian Johnson and Neil Cohen are personally, directly, and individually liable in that they aided and abetted Defendant Fitness International, LLC in its unlawful discriminatory acts against Cohen.

184. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NCHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

185. Defendants' conduct constituted a difference in treatment based on Cohen's national origin (Israeli), subjected her to discriminatory and harassing terms, conditions, and privileges of employment, and exceeded petty slights or trivial inconveniences.

186. Defendants willfully engaged in discriminatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NCHRL.

Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**<u>TENTH CAUSE OF ACTION</u>**
**(Retaliation in Violation of NCHRL)**
***Against All Defendants***

187. Plaintiff repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

188. Defendants unlawfully retaliated against Cohen in violation of the NCHRL by, *inter alia*, terminating her employment in response to her protected complaints, failing to reasonably investigate and remediate Cohen's claims of discrimination and harassment, actively discouraging her from making complaints, and subjecting her to adverse employment actions including removal of chairs from her work area, cutting off all new client assignments, targeting and destroying her existing client relationships, excluding her from team meetings, and ultimately terminating her employment under the pretextual guise of alleged policy violations.

189. Defendants Brian Johnson and Neil Cohen, as Cohen's direct supervisors, are personally, directly, and individually liable as supervisors for the unlawful retaliation against Cohen.

190. Alternatively, Defendants Brian Johnson and Neil Cohen are personally, directly, and individually liable in that they aided and abetted Defendant Fitness International, LLC in its unlawful retaliatory acts against Cohen.

191. Defendants' retaliation was directly related to Cohen's written protected complaints, reports of sexual harassment, and her rejection of Johnson's unwanted sexual advances, including his attempted touching, sexualized body comments, invasive marital questions, and repeated personal lunch invitations.

192. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NCHRL, Cohen has suffered, and continues to suffer, emotional and psychological distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and has incurred compensatory damages, emotional distress damages, economic damages, attorneys' fees, and costs.

193. Defendants retaliated against Cohen because she opposed and reported discrimination and harassment, including by cutting off new client assignments, targeting her client relationships, excluding her from meetings, surveilling her after her complaints, and terminating her employment under the pretextual guise of alleged policy violations.

194. Defendants willfully engaged in unlawful retaliatory practices with malice and/or reckless indifference to Cohen's statutorily protected rights under the NCHRL.

195. Cohen is entitled to an award for compensatory damages, economic damages, emotional distress damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, disbursements, and other relief the Court may deem just and proper.

**JURY TRIAL DEMANDED**

196. Plaintiff hereby demands a trial by jury on all issues triable by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, it is respectfully requested that the Court enter judgment in favor of Cohen against LA Fitness, Brian Johnson, and Neil Cohen in an amount to be determined by the finder of fact, on the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, awarding compensatory damages, economic damages, emotional distress damages, punitive damages, attorneys' fees and costs, and granting such other relief as may be just.

Dated: September 8, 2026
New York, New York

Respectfully Submitted,

**MIZRAHI KROUB LLP**

By: Ingrid M. Fernandez

Ingrid M. Fernandez
Daniel Bernard
225 Broadway, 39th Floor
New York, NY 10007

Telephone: (212) 595-6200
ifernandez@mizrahikroub.com
dbernard@mizrahikroub.com
*Attorneys for Plaintiff*